IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| POLLY BACA and ROBERT NEMANICH,<br><br>                Plaintiffs/<br>                Appellants,<br><br>     v.<br><br>JOHN W. HICKENLOOPER JR., in his official capacity as Governor of Colorado, CYNTHIA H. COFFMAN, in her official capacity as Attorney General of Colorado, and WAYNE W. WILLIAMS, in his official capacity as Colorado Secretary of State,<br><br>                Defendants/<br>                Appellees. | **EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL**<br><br>10th Circuit Case No. 16-1482<br><br>On appeal from the United States District Court for the District of Colorado, Case No. 1:16-cv-02986-WYD-NYW |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND.....................................................3

III.    FED. R. APP. P. 8(A)(2)......................................................................................5

IV.    10TH CIR. R. 8.1 REQUIRED SHOWING ..........................................................6

      A.    10th Cir. R. 8.1(A): Jurisdiction ...............................................................6

      B.    10th Cir. R. 8.1(B): Likelihood of Success on Appeal ...........................6

            1.    Standard of Review.......................................................................6

            2.    C.R.S. § 1-4-304 Imposes Qualifications on Electors Not Set Forth in the Constitution and Unconstitutionally Limits Their Voting Power. ............................................................................6

            3.    C.R.S. § 1-4-304 Violates Article II, Section 1, and The Twelfth Amendment by Imposing Making the Electors Superfluous. ...................................8

            4.    C.R.S. § 1-4-304 Violates the Supremacy Clause By Usurping Congress' Exclusive Power to Count Electoral Votes...........................................12

            5.    C.R.S. § 1-4-304 Violates the First Amendment by Dictating Baca and Nemanich's Votes. .............................................13

      C.    10th Cir. R. 8.1(C): Baca and Nemanich Will Suffer Immediate and Irreparable Harm if the Injunction is Not Granted............................................17

      D.    10th Cir. R. 8.1(D): Defendants/Appellees Will Not Suffer Harm if the Injunction is Granted.............................................................18

      E.    10th Cir. R. 8.1(E): There is No Risk of Harm to the Public Interest...............................19

# TABLE OF AUTHORITIES

Page

**<u>Cases</u>**

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ............................................................................ 13, 14, 15

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ......................................................................................... 13

*Burson v. Freeman*,
   504 U.S. 191 (1992) ......................................................................................... 14

*Doubleclick Inc. v. Paikin*,
   402 F. Supp. 2d 1251 (D. Colo. 2005) ............................................................ 18

*Elrod v. Burns*,
   427 U.S. 347 (1976) ......................................................................................... 17

*Eu v. San Francisco Cty. Democratic Cent. Comm.*,
   489 U.S. 214 (1989) ......................................................................................... 14

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) .................................................................... 17, 20

*Hurtado v. California*,
   110 U.S. 516 (1884) ......................................................................................... 11

*Illinois Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173 (1979) ......................................................................................... 13

*McIntyre v. Ohio Elections Comm'n*,
   514 U.S. 334 (1995) ......................................................................................... 16

*Norman v. Reed*,
   502 U.S. 279 (1992) ......................................................................................... 13

*O Centro Espirita Beneficente União De Vegetal v. Ashcroft*,
   314 F.3d 463 (10th Cir. 2002) ........................................................................... 6

*Powell v. McCormack*, 395 U.S. 486, 547 (1969) ....................................................... 7

*Ray v. Blair*, 343 U.S. 214 (1952) ........................................................................... 7, 9

*Schrier v. Univ. Of Co.*,
   427 F.3d 1253 (10th Cir. 2005) ........................................................................ 19

*See U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995) ......................................... 7, 8

*Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*,
   805 F.2d 351 (10th Cir. 1986). ........................................................................ 17

*U.S. v. Classic*,
  313 U.S. 299 (1941) ................................................................................. 16

*Williams v. Rhodes*,
  393 U.S. 23 (1968) .................................................................................... 9

*Yick Wo v. Hopkins*,
  118 U.S. 356 (1886) ................................................................................. 20

**<u>Statutes</u>**

C.R.S. § 1-13-723 ........................................................................................ 17

C.R.S. § 1-13-111 ........................................................................................ 17

C.R.S. § 1-4-304 .................................................................................. passim

28 U.S.C. § 1292 ........................................................................................... 7

28 U.S.C. § 1331 ........................................................................................... 7

28 U.S.C. § 2201 ........................................................................................... 7

28 U.S.C. § 2202 ........................................................................................... 7

**<u>Other Authorities</u>**

*Is The Uniform Faithful Presidential Electors Act Constitutional?*
  2016 Cᴀʀᴅᴏᴢᴏ L. Rᴇᴠ. Dᴇ Nᴏᴠᴏ 129 ....................................................... 9

The Federalist No. 68
  (Alexander Hamilton) (Clinton Rossiter ed., 1961) ................................ 8, 9, 10, 14

**<u>Rules</u>**

10th Circuit Rule 8.1 ............................................................................. passim

10th Circuit Rule 8.2 .................................................................................... 1

Colo. Const. Sched. § 20 ............................................................................ 19

Fed. R. App. P. 8 ...................................................................................... 1, 6

**<u>Constitutional Provisions</u>**

U.S. Const. Amend. 1 ................................................................................ 5, 7

U.S. Const. Amend. 12 ......................................................................... passim

U.S. Const. Amend. 14 .............................................................................. 5, 7

U.S. Const. Art. II, §1 ......................................................................... passim

U.S. Const. Article I § 4 ............................................................................ 10

Plaintiffs/Appellants Polly Baca and Robert Nemanich move on an emergency basis, pursuant to Fed. R. App. P. 8(a)(2) and 10th Cir. R. 8.1 and 8.2, for an order granting an injunction against the enforcement of C.R.S. § 1-4-304 pending appeal of the district court's December 12, 2016 Minute Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

## I.    INTRODUCTION

"I could stand in the middle of Fifth Avenue and shoot somebody and I wouldn't lose voters."  When presidential candidate Donald J. Trump said this, it was a boast. But change "voters" to "electors," it is now a statement of truth:  299 electors are required to vote according to the popular vote in their states, and electors in states that voted for Trump must vote for Trump even if he were to "stand in the middle of Fifth Avenue and shoot somebody."  This cannot be right.

On December 19, 2016, 538 electors will gather in capitals across the country to cast their votes for President and Vice President.  Baca and Nemanich are presidential electors for the state of Colorado, and they seek to vote according to their consciences, for the outcome that best serves this country.  But C.R.S. § 1-4-304 unlawfully compels Baca and Nemanich to vote for "the presidential candidate" and "vice-presidential candidate who received the highest number of votes" in Colorado's general election. Baca and Nemanich have deep concerns about Donald J. Trump and Michael Pence's qualifications and fitness to serve as President and Vice President of the United States. Baca and Nemanich thus intend to join other presidential electors and vote for candidates they believe are most fit and qualified to govern the United States—and the most likely to win the required

1

number of electoral votes or win a contested vote in the House of Representatives. This may require them to vote for candidates other than Clinton and Kaine.

The Colorado Department of State stated that "if an elector fail[s] to follow" C.R.S. § 1-4-304, it "would likely remove the elector and seat a replacement elector until all nine electoral votes were cast for the winning candidates." Compl. Ex. 1, Ex. A.[1] As a result, Baca and Nemanich moved for a temporary restraining order and preliminary injunction preventing Defendants/Appellees (Colorado's Governor, Attorney General, and Secretary of State) from either enforcing C.R.S. § 1-4-304 by forcing Baca and Nemanich to vote for Clinton and Kaine, removing or replacing them as presidential electors, or prosecuting them for voting for persons other than Clinton and Kaine. On December 12, 2016, the district court denied the motion from the bench, but has not issued a written order.

The Electoral College vote is four days away. Baca and Nemanich make this emergency motion for an injunction pending appeal to prevent Defendants/Appellees from dictating how Baca and Nemanich must vote, removing and replacing them as electors, and/or prosecuting them for voting. The district court erred in denying Appellants' motion for a temporary restraining order.

*First*, the court failed to properly consider Baca and Nemanich's likelihood of success on the merits. Colorado's law violates the Constitution. The Constitution guarantees Baca and Nemanich's right to exercise their judgment.

---

[1] This power has now been confirmed by a December 13, 2016, Colorado District Court Order that this Court can take judicial notice of, submitted herewith.

*Second*, absent an injunction, Baca and Nemanich will suffer irreparable harm if compelled to vote against their will, removed and replaced as electors—they have only this single one opportunity to fulfill their roles as electors and vote for the President and Vice President—or criminally prosecuted for their votes. On December 14, 2016, Secretary of State Williams instituted a new oath for the Electors and stated that if they violate the statute, they will likely face either a misdemeanor or felony perjury charge.[2] After December 19, 2016, no remedy at law can undo the harm that Baca and Nemanich will suffer because Baca and Nemanich will not have a further opportunity to vote for President and Vice President in this election, and they will be criminals whose fates are left to the whim of prosecutorial discretion and/or a jury.  In contrast, Defendants/Appellees will not be harmed by an injunction, since the injunction will not force them to act.

*Finally*, the public interest will not be harmed but instead served by an injunction upholding the Constitution and allowing electors to fulfill their constitutional duty to elect qualified and competent candidates to the highest office in the land.  Indeed, the district court's order is contrary to the public interest.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

Baca and Nemanich were nominated and selected to be presidential electors for 2016 at the Colorado Democratic Party's convention in April 2016.  *See* Compl. ¶ 11, Ex. 1.  As part of their nomination and selection, they were required

---

[2] *See* http://www.politico.com/story/2016/12/colorado-elections-chief-rogue-electors-could-face-perjury-charge-232661

to sign a pledge at the time they became Presidential Electors affirming that they would cast their ballots on December 19, 2016 for the Democratic Presidential and Vice-Presidential candidates. *See* Compl. ¶ 12, Ex. 1. The Democratic candidates were Clinton and Kaine. Though Clinton and Kaine won the nationwide popular vote by at least 2.8 million votes, the distribution of those votes across the states suggest that Donald Trump and Michael Pence, will win the majority of Electoral College votes on December 19, 2016 if the electors vote according to the popular vote in their respective states. Baca and Nemanich are concerned Trump and Pence are unfit to serve as President and Vice President of the United States.

Given their concerns, Baca and Nemanich wish to exercise their judgment and free will to vote for the individuals they believe are the most qualified and fit for the presidency and vice presidency, and prevent Trump and Pence from becoming President and Vice President of the United States. This may require Baca and Nemanich to vote for a consensus candidate upon whom Democratic and Republican electors can agree, rather than Clinton and Kaine.

C.R.S. § 1-4-304 states that "[e]ach presidential elector shall vote for the presidential candidate and, by separate ballot, vice-presidential candidate who received the highest number of votes at the preceding general election in this state." In an email to Nemanich, the Colorado Department of State stated that "if an elector fail[s] to follow" C.R.S. § 1-4-304, the Department of State "would likely remove the elector and seat a replacement elector until all nine electoral votes were cast for the winning candidates." Compl. Ex. 1, Ex. A.

Baca and Nemanich sued Defendants/Appellees in the District of Colorado,

seeking declaratory judgment that C.R.S. § 1-4-304 is unconstitutional under
Article II § 1 and the First, Twelfth, and Fourteenth Amendments, of the U.S.
Constitution, and an injunction preventing Defendants/Appellees from removing
and/or replacing (or prosecuting) any presidential elector who votes for a
presidential or vice presidential candidate who did not receive the highest number
of votes in a general election in Colorado immediately preceding the convention of
the electors. *See* Compl. Baca and Nemanich moved for a temporary restraining
order or preliminary injunction. *See Baca et al. v. Hickenlooper et al.*, No. 16-cv-
02986-WYD-NYW, Motion, ECF No. 2 (Dec. 6, 2016). The Colorado Republican
Committee moved to intervene, as did Donald Trump and Donald J. Trump for
President, Inc. *See id.* ECF Nos. 11, 16. The court granted both motions for
intervention. *See id.* ECF Nos. 15, 18. The court heard the motion on December
12, 2016, and denied it in an oral ruling from the bench. *See id.* ECF No. 19 ,
December 12, 2016 Minute Order Denying Plaintiffs' Motion for Temporary
Restraining Order and Preliminary Injunction ("Order").

## III. FED. R. APP. P. 8(a)(2)

A motion for injunction while an appeal is pending "may be made to the
court of appeals." Fed. R. App. P. 8(a)(2). If so, the motion must "show that
moving first in the district court would be impracticable." Here, moving first in
the district court would have been futile given the district court denied Baca and
Nemanich's motion for a temporary restraining order or preliminary injunction,
and impracticable due to the limited time before the meeting of Colorado's electors
on Dec. 19, 2016. Even a slight delay here is tantamount to a ruling against Baca

and Nemanich on the merits and could result in criminal prosecution.

## IV.    10TH CIR. R. 8.1 REQUIRED SHOWING

### A.    10th Cir. R. 8.1(A): Jurisdiction

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331,

§§ 2201, and 2202.  The federal question presented by this case is the

constitutionality of Colorado's Presidential Electors statute, C.R.S. § 1-4-304(5),

which requires electors to vote "for the presidential candidate and, by separate

ballot, vice-presidential candidate who received the highest number of votes at the

preceding general election in this state."  This violates Article II of the U.S.

Constitution, the First Amendment, the Twelfth Amendment, the Fourteenth

Amendment, and the Supremacy Clause. This Court has jurisdiction under 28

U.S.C. § 1292(a)(1) because the order appealed refused an injunction.

### B.    10th Cir. R. 8.1(B): Likelihood of Success on Appeal

#### 1.    Standard of Review

"When reviewing the district court's grant of preliminary injunctive relief,

[this Court] may set it aside for an abuse of discretion, an error of law or clearly

erroneous factual findings."  *O Centro Espirita Beneficiente União De Vegetal v.*

*Ashcroft*, 314 F.3d 463, 466 (10th Cir. 2002).  The district court erred by finding

that Baca and Nemanich were unlikely to succeed on the merits; would suffer no

irreparable harm; that Defendants/Appellees would be harmed; and that the public

interest did not support a temporary restraining order or injunctive relief.

#### 2.    C.R.S. § 1-4-304 Imposes Qualifications on Electors Not Set Forth in the Constitution and Unconstitutionally Limits

**Their Voting Power.**

The Constitution sets forth the qualifications for the President, Vice President, Senators, and House of Representatives. In clear, binding precedent, the Supreme Court has repeatedly struck down both state and federal efforts to impose additional qualifications on members of the United States Congress. *See U.S. Term Limits v. Thornton,* 514 U.S. 779 (1995); *Powell v. McCormack*, 395 U.S. 486, 547 (1969). The same must hold true for those elected to the Electoral College.

Though members of the Electoral College were once appointed by the states, in every state they are now elected by the public at large, which is permitted by the power of states legislatures to "appoint" electors. *See* U.S. Const. Art. II, §1; *Ray v. Blair*, 343 U.S. 214 (1952). Thus, Electors are elected by the public just like the public elects Senators and Representatives.

Like Senators and Representatives, the Constitution sets forth Electors' qualifications: Electors must be citizens; must be of voting age (18); cannot be Senators, Representatives, or hold an office of trust or profit under the United States; must live in the state in which they vote; and cannot be engaged in rebellion or insurrection. *See* U.S. Const. Art. II § 1; Amend. XII; Amend. XIV § 3.

State laws, such as Colorado's, which require Electors to vote for specific candidates for President and Vice President imposes an additional qualification on Electors in contravention of the Constitution and *U.S. Term Limits v. Thornton*. As the Supreme Court said, the "qualifications in the Constitution [are] fixed and exclusive." 514 U.S. at 790. Requiring an Elector to vote is clearly an improper qualification because it mandates that only the people that agree to vote for

7

particular candidates are allowed (*i.e.,* qualified) to become Electors.

In *Thornton*, the Court rejected an argument that "a State's reserved power[s]" allowed states "to place additional restrictions on the choices that its own voters may make" based on the Framers' intent that the Constituion would be the "exclusive source of qualifications." *Id.* at 800. This argument is even more compelling for Electors because the Electoral College was created by the Constitution – it did not exist in the states prior to ratification – thus, there was no power reserved to the states to further limit Electors' qualifications.

Any argument that because Article II left it to the states' legislators to determine the "Manner" of how Electors would be appointed, states can limit how Electors vote is eliminated by U.S. Const. Article I § 4. There, the Framers left it to the states to determine the "Manner" in which Senators and Representatives would be elected. No serious argument could be made that because the states dictated the Manner of such elections that the states could limit how the Senators or Representatives vote. Similarly, just because Article II § 1 lets the states determine the "Manner" in which Electors are appointed does not permit the states to dictate how Electors vote. Colorado's law forcing Electors to vote for specific candidates every four years is clearly unconstitutional.

**3.      C.R.S. § 1-4-304 Violates Article II, Section 1, and The Twelfth Amendment by Imposing Making the Electors Superfluous.**

"[P]olitical parties in the modern sense were not born with the Republic. They were created by necessity, by the need to organize the rapidly increasing

population, scattered over our Land, so as to coordinate efforts to secure needed legislation and oppose that deemed undesirable." *Ray v. Blair*, 343 U.S. 214, 220–21, (1952). "The presidential electors exercise a federal function in balloting for President and Vice-President but they are not federal officers or agents any more than the state elector who votes for congressmen. They act by authority of the state that in turn receives its authority from the federal constitution." *Id.* at 224–25. Thus, though the states have authority to appoint electors pursuant to Article II § 1, that power cannot "be exercised in such a way as to violate express constitutional commands that specifically bar States from passing certain kinds of laws." *Williams v. Rhodes*, 393 U.S. 23, 29 (1968).

*Ray* found that requiring electors to sign a pledge to vote for certain candidates in a *party primary* was valid and constitutional, but explicitly left open the question of enforcement of statutes such as Colorado's. The Court suggested states had no power to control electors in a general presidential election: "[E]ven if such promises of candidates for the Electoral College are ***legally unenforceable*** because violative of an assumed ***constitutional freedom of the elector under the Constitution, Art. II, § 1, to vote as he may choose in the Electoral College***, it would not follow that the requirement of a pledge in the primary is unconstitutional." *Ray*, 343 U.S. at 230 (emphasis added).

Only electors vote for the President and Vice-President. *See* U.S. Const. Art

II § 1; U.S. Const. Amend. XII. The Electoral College was by design a "small number of persons selected by their fellow-citizens . . . most likely to possess the information and discernment requisite to so complicated an investigation." The Federalist No. 68, at 412 (Alexander Hamilton) (Clinton Rossiter ed., 1961). Open deliberation immune from outside influence was intended to be a hallmark of the Electoral College: The electors act "under circumstances favorable to deliberation." *Id.* The electors would be insulated from "mischief," "tumult," and "disorder." *Id.* The electors would be less exposed "to heats and ferments" of the people. *Id.* The Electoral College creates an "obstacle . . . to cabal, intrigue, and corruption." *Id.* Chief among the reasons for the Electoral College was to prevent "foreign powers" from "gain[ing] an improper ascendant in our councils," which might be achieved "by raising a creature of their own to the chief magistracy of the Union." *Id.* at 412–13. The electors were to "vote for some fit person as President." *Id.* at 413. Thus, the country would be:

> afford[ed] a moral certainty that the office of President will seldom fall to the lot of any man who is not in an eminent degree endowed with the requisite qualifications. Talents for low intrigue, and the little arts of popularity, may alone to suffice to elevate a man to the first honors in a single State; but it will require other talents, and a different kind of merit, to establish him in the esteem and confidence of the whole Union . . . .

*Id.* at 414. Electors, then, were never intended to be rubber stamps. The

Electoral College is a deliberative, independent, and representative body.[3]

Colorado's statute dictating how the electors shall vote renders the Electoral College superfluous. It therefore violates one of the basic canons of Constitutional law and statutory interpretation: absent clear reason, a court cannot assume a part of the Constitution is superfluous. *See Hurtado v. California*, 110 U.S. 516, 534 (1884). The Founders did not draft the Constitution so that the President and Vice President were directly elected by the majority of the popular vote. Instead, they created the Electoral College. At most, their view was that the Electoral College could consider the popular will: "the sense of the people should operate in the choice of" President. Federalist No. 68, at 413.

If Colorado's electors are *forced* to vote for the candidates who won the majority of the popular vote in Colorado, then they serve no purpose as electors and are rendered superfluous. Electors who serve as a rubber stamp for the popular vote of a given state do not fulfill the constitutional purpose of electors because rubber stamps do not "deliberate." Under Colorado's statute, the electors are not permitted to conduct an "investigation" if they have no say in who becomes

---

[3] Art. II § 1 was amended by the Twelfth Amendment, which changed the means by which the House and Senate voted. Despite the significant changes to the machinations of the Electoral College, however, one constant remained: the electors were to remain an independent, deliberative, and investigative body. *See* Russell Shapiro, *Is The Uniform Faithful Presidential Electors Act Constitutional?*, 2016 CARDOZO L. REV. DE NOVO 129, 132-33, 147-48.

President and are instead required to vote for a particular candidate. Further, under Colorado's statute electors are not isolated from the "mischief," "tumult," "disorder," "heats and ferments" of an election and the populace; instead, they become tools of these forces, required to elect candidates who exploit such tactics.

Baca and Nemanich are substantially likely to succeed on appeal because Section1-4-304 undermines, is inconsistent with, and renders superfluous the Electoral College.[4]

### 4. C.R.S. § 1-4-304 Violates the Supremacy Clause By Usurping Congress' Exclusive Power to Count Electoral Votes.

Congress is required to count the electoral votes and has exclusive authority to do so. *See* U.S. Const. amend. XII ("The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted."); 3 U.S.C. § 15. But C.R.S. § 1-4-304 gives Colorado the authority to discount/delete/ignore an elector's vote for persons who did not win the popular vote in the state. This violates the Supremacy Clause, plain and simple. If Congress counts the votes, and it has counted over 150 "faithless" electors' votes over the centuries, the states lack the power to not count an electors' vote. Thus, the statute is unconstitutional.

---

[4] Any argument that because the safety valve created by the Electoral College has not yet been used in our history it can be discarded is dangerous and wrong. The Second Amendment has not yet been invoked by the general citizenry to fight against a tyrannical central government that, by military force, oppresses the People. No one would argue the rights therein can be discarded due to disuse.

5.    **C.R.S. § 1-4-304 Violates the First Amendment by Dictating Baca and Nemanich's Votes.**

 Section 1-4-304 violates Baca and Nemanich's First Amendment rights by dictating how they must vote and by eliminating political debate.

*First*, "voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, (1979). *Burdick v. Takushi* established a two-tier standard of review for state election laws, depending "upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." 504 U.S. 428, 434 (1992). "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

C.R.S. § 1-4-304 imposes a "severe" restriction on electors' rights to vote for the President and Vice President by dictating for whom the electors must vote. Electors "shall vote for the presidential candidate and . . . vice-presidential candidate who received the highest number of votes at the preceding general

election in [Colorado]." C.R.S. § 1-4-304. The statute is enforced by severe criminal penalties up to and including a felony charge of perjury resulting in a $5,000 fine and 18 months in prison. *See* C.R.S. §§ 1-13-111, 1-13-723; footnote 2, *supra*. Defendants/Appellees therefore must show that Section 1-4-304 is "narrowly drawn" to advance a "compelling" state interest. They cannot.

In Colorado, private political parties nominate and elect the electors. As a result, the state lacks a compelling state interest in determining who the electors are and what they believe. The state is not a political party and has no legitimate interest in whom people vote for. Rather, the state's compelling interests in the election process are typically "in protecting voters from confusion and undue influence," *Burson v. Freeman*, 504 U.S. 191, 199 (1992) (citing *Eu v. San Francisco Cty. Democratic Cent. Comm.*, 489 U.S. 214, 228–29 (1989)), and "preserving the integrity of its election process." *Eu*, 489 U.S. at 231. The Supreme Court thus has "upheld generally-applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Anderson*, 460 U.S. at 788 n.9. For example, Colorado has a constitutional law that prohibits electioneering within 100 feet of a polling place. *See* C.R.S. § 1-13-714. While this law puts some burden on First Amendment rights, it is constitutional in part because it serves the compelling state interests of protecting voters' ability to vote for their candidate of choice. In contrast, C.R.S. § 1-4-304 imposes undue

14

influence on the electors' votes and removes integrity from the electoral voting process by *requiring* electioneering when it comes to the electors—it requires electors to either vote according to the results of the general election or be removed and replaced by someone who is willing to have his or her vote dictated by the state. This law requires electors to vote for a specific candidate. In fact, Clinton and Kaine's names are pre-printed on the ballot, leaving Baca and Nemanich with no meaningful choice in whom they vote for. The very concept is antithetical to democracy, free speech, and the Electoral College.

The only state interest that could justify such a restriction is an interest in rejecting the Electoral College altogether in favor of a popular vote. But that is not a permissible state interest under the Supremacy Clause. Even if Colorado wishes the Electoral College were not a part of our Constitutional structure, it is.

Even if Defendants could show a compelling state interest (they cannot), they cannot demonstrate that Section 1-4-304 is narrowly tailored to advance such an interest. A law that dictates how the electors must vote is not a "generally-applicable and evenhanded restriction[] that protect[s] the integrity and reliability of the electoral process itself." *Anderson*, 460 U.S. at 788 n. 9. *See also State ex rel. Beck v. Hummel*, 80 N.E.2d 899, 908 (Ohio 1948) ("elector may vote for any person he pleases for president or vice-president …. It is only by force of a moral obligation, not a legal one, that the presidential electors pledged to certain

candidacies fulfill their pledges"). Section 1-4-304 instead specifically targets Colorado electors and damages the integrity of the electoral process by dictating who they must vote for.  As a result, it is not narrowly tailored.

*Second*, "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (citation omitted) (quotations omitted).  Such speech "occupies the core of the protection afforded by the First Amendment."  *Id.*  "When a law burdens core political speech, [courts] apply 'exacting scrutiny,' and . . . uphold the restriction only if it is narrowly tailored to serve an overriding state interest."  *Id.* at 347. There is a fundamental "right of qualified voters within a state to cast their ballots and have them counted."  *U.S. v. Classic*, 313 U.S. 299, 315 (1941).

Any statute that requires citizens to vote a certain way eliminates political debate in violation of the First Amendment.  The Electoral College's purpose is "deliberation" and "investigation."  Federalist No. 68.  Under Section 1-4-304, there is no deliberation or investigation to be done because the electors are bound to vote for specific candidates no matter what.  Thus, C.R.S. § 1-4-304 improperly burdens electors' core political speech. Because C.R.S. § 1-4-304 violates the First Amendment, Plaintiffs have a substantial likelihood of succeeding on appeal.

**C.     10th Cir. R. 8.1(C): Baca and Nemanich Will Suffer Immediate and Irreparable Harm if the Injunction is Not Granted**

"In federal courts, the moving party must show irreparable injury in order to obtain a preliminary injunction. Injury is generally not irreparable if compensatory relief would be adequate. Thus, [Plaintiffs] must show not only that [they are] injured by the failure to issue the preliminary injunction, but also that damages are not adequate to compensate that injury." *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

If the Court does not grant an injunction, Baca and Nemanich will suffer irreparable injury. Colorado has stated that they will be removed as electors and charged with a felony or misdemeanor, which may permanently deprive them of the right to vote in some states. There is no adequate (or indeed, any) remedy at law that can mitigate these harms. Once December 19, 2016 passes, the violation of Baca and Nemanich's rights and threat to their liberty cannot be undone. This is perhaps the most classic case of irreparable injury imaginable. *See Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016) ("Because there can be no 'do-over' or redress of a denial of the right to vote after an election, denial of that right weighs heavily in determining whether plaintiffs would be irreparably harmed absent an injunction."). The same is true of the First Amendment restraints. *Id.* ("Accordingly, while we must nonetheless engage in our traditional equitable inquiry as to the presence of irreparable harm in such a context, we remain

17

cognizant that the violation of a constitutional right must weigh heavily in that analysis. *Cf. Elrod v. Burns*, 427 U.S. 347, 374 & n.29 (1976) (holding that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury[,]" while noting that this is so because "[t]he timeliness of political speech is particularly important")). After Monday there is literally no way to put Baca and Nemanich back in their rightful position.

### D.    10th Cir. R. 8.1(D): Defendants/Appellees Will Not Suffer Harm if the Injunction is Granted

"The third prong of a standard preliminary injunction inquiry requires [Plaintiffs] to demonstrate that the balance of harms weighs in [their] favor, and that denying the injunction will cause more harm than granting it." *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1260 (D. Colo. 2005) (citation omitted).

No hardship will occur to Defendants or the State if the injunction is implemented. There will be no need to re-do the election. The election, when it comes to the President and Vice President, exists for the people to vote for the electors, including Baca and Nemanich. The Colorado Constitution, Schedule, Section 20 states that "after the year [1876] the electors of the electoral college shall be chosen by direct vote of the people." Though people cast their ballots for presidential and vice-presidential candidates, they were voting for electors specific to political parties/candidates. It is up to those electors, who have now been chosen by the people of Colorado, to choose the best candidates. That is the design

of the Constitution. Any public confusion regarding how the election works is no reason to *de facto* eliminate a key provision of the Constitution.

Further, the injunction does not require Defendants to take any action. To the contrary, it is a prohibitory rather than a mandatory injunction: it merely prevents Defendants from enforcing an unconstitutional statute. *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (characterizing an injunction as mandatory if it affirmatively requires the nonmovant to act in a particular way). Indeed, the status quo right now is that no elector has been precluded from voting their conscience or prosecuted for such. The injunction will simply keep this status quo in place, ensuring no elector – including Bacan and Nemanich – is so precluded. The fact that the injunction does not compel action or require Defendants to implement any new procedures is good evidence that it will impose no significant hardship on them.

### E.    10th Cir. R. 8.1(E): There is No Risk of Harm to the Public Interest.

The public has a strong interest in the protection and enforcement of the rights established by the First and Fourteenth Amendments. The public has a strong interest in having the Electoral College operate as intended by deliberating and selecting a President and Vice President who they believe best qualified. The public has a significant interest in making sure fit and competent leaders are elected. The majority of voters of this state and this country voted for Clinton and

Kaine, but there is great risk that Trump and Pence, whom Baca and Nemanich believe, based on their deliberation and investigation, are neither fit nor competent, will become President and Vice President. Thus, the public interest supports the right of Electors to choose whom they believe to be the most viable, fit, and competent persons for office, even if not Clinton or Kaine. In fact, to force these electors to vote for candidates who may not prevail, and punish them criminally if they do not, harms the public's interest by preventing electors from performing their constitutional duty to elect fit, competent, and qualified candidates. *See, e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (voting is a "fundamental right, because preservative of all rights"); *Fish*, 840 F.3d at756 (noting "public interest in broad exercise of the right to vote").

Any assertion that the public's interest will be harmed because millions of votes will be ignored is a red herring. First, due to Colorado's winner-take-all system, millions of votes are already being ignored. Allowing Electors to vote their conscience may result in some of those votes being recognized. Second, voters elected the Electors to exercise their judgment. If Clinton were discovered to be trading state secrets for cash, the voters would not insist that the Electors cast their votes for her. Instead, the voters would insist the Electors vote against her.

WHEREFORE, this Court should enter an order enjoining C.R.S. § 1-4-304 during the pendency of this appeal and confirming the right of electors to vote free of state

20

restrictions on December 19.

Dated:  December 15, 2016          RESPECTFULLY SUBMITTED,


By: _/s/ Jason Wesoky_____
Jason Bryan Wesoky
1331 17th Street, Suite 800
Denver, CO 80202
Telephone: 303-623-9133
Facsimile: 303-623-9129
Email: Jason.w@hamiltondefender.org

Attorney for Plaintiffs/Appellants
POLLY BACA and ROBERT
NEMANICH

## 10TH CIR. R. 8.2(A) CERTIFICATE

I, Jason Wesoky, hereby certify as follows pursuant to 10th Circuit Rule 8.2(A)(1)-(5):

1.     The attached Motion was not filed earlier because the district court did not rule on Baca and Nemanich's motion seeking a temporary restraining order or preliminary injunction until December 12, 2016.

2.     The underlying order was entered on December 12, 2016.

3.     The order went into effect on <u>December 12, 2016, at 4:19 p.m.</u>

4.     The telephone numbers and email addresses for all counsel of record appear below, all of whom were given notice via email at approximately 3:30 p.m. on December 14, 2016 that this motion would be filed.

Grant T. Sullivan
LeeAnn Morrill
Matthew David Grove
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO 80203
720-508-6349
Fax: 720-508-6038
Email: grant.sullivan@coag.gov
Email: leeann.morrill@coag.gov
Email: matt.grove@coag.gov

Attorneys for Defendants
JOHN W. HICKENLOOPER, JR., CYNTHIA H. COFFMAN, and WAYNE W. WILLIAMS

Christopher Owen Murray
Brownstein Hyatt Farber Schreck, LLP-Denver
410 17th Street, Suite 2200
Denver, CO 80202-4432
303-223-1100
Fax: 303-223-1111
Email: cmurray@bhfs.com

Attorney for Intervenors
COLORADO REPUBLICAN COMMITTEE, DONALD J. TRUMP, and DONALD J. TRUMP FOR PRESIDENT, INC.

Jason Bryan Wesoky
1331 17th Street, Suite 800
Denver, CO 80202
Telephone: 303-623-9133
Facsimile: 303-623-9129
jason.w@hamiltondefenders.org

Attorney for Plaintiffs/Appellants
POLLY BACA and ROBERT
NEMANICH

     5.     This is not an immigration case.

*/s/ Jason Wesoky*
Counsel of Record
